# EXHIBIT A

# COMPLAINT

# EXHIBIT A

Electronically Filed
11/21/2023 4:46 PM
Steven D. Grierson
CLERK OF THE COURT

1  P. STERLING KERR, ESQ.
   Nevada Bar No. 3978
2  GEORGE E. ROBINSON, ESQ.
   Nevada Bar No. 9667
3  KERR SIMPSON ATTORNEYS AT LAW
4  2900 W. Horizon Ridge Parkway, Suite 200
   Henderson, Nevada 89052
5  Telephone No. (702) 451–2055
   Facsimile No. (702) 451-2077
6  Email: sterling@kerrsimpsonlaw.com
7  Email: george@kerrsimpsonlaw.com
   *Attorneys for Plaintiffs*

CASE NO: A-23-882064-C
Department 28

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation dba iMARKETSLIVE;<br><br>            Plaintiffs,<br>v.<br><br>AMANDA CUSTER, an individual D/B/A FOREX FOR WOMEN or FX FOR WOMEN; COLE CUSTER, an individual; JENN EUSTERWIEMANN, an individual; JOSHUA EUSTERWIEMANN, an individual; JEMMA WILSON, an individual; CHRISTIAN OERTEL, an individual; DOE 1-100 individuals; and ROE 1-10 entities.<br><br>            Defendants. | Case No.:<br><br>Dept. No.:<br><br>COMPLAINT FOR:<br><br>1) BREACH OF CONTRACT;<br>2) VIOLATION OF UNIFORM TRADE SECRETS ACT<br>3) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>4) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and<br>5) CIVIL CONSPIRACY<br><br>AMOUNT IN DISPUTE IN EXCESS OF $50,000 |

COMES NOW, Plaintiff by and through its attorneys, KERR SIMPSON ATTORNEYS AT LAW, complain and allege against Defendants AMANDA CUSTER, D/B/A FOREX FOR WOMEN or FX FOR WOMEN; COLE CUSTER, JENN EUSTERWIEMANN; JOSHUA EUSTERWIEMANN; JEMMA WILSON; and CHRISTIAN OERTEL as follows:

/ / /

/ / /

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff International Markets Live ("IML") is a New York limited liability company.

2. Defendant AMANDA CUSTER, D/B/A FOREX FOR WOMEN or FX FOR WOMEN, is an individual residing in California.

3. Defendant COLE CUSTER is an individual residing in California.

4. Defendant JENN EUSTERWIEMANN is an individual residing in Nebraska.

5. Defendant JOSHUA EUSTERWIEMANN is an individual residing in Nebraska.

6. Defendant JEMMA WILSON is an individual residing in New Zealand.

7. Defendant CHRISTIAN OERTEL is an individual residing in New Zealand.

**JURISDICTION AND VENUE**

8. Jurisdiction is proper as the agreements that the parties entered into state that all disputes are to be resolved in Las Vegas, Nevada.

9. Venue is proper as the agreements the parties entered into state that all disputes are to be resolved in Las Vegas, Nevada.

**GENERAL ALLEGATIONS**

IML FACTS

10. IML provides its customers with digital educational tools and services focused on teaching skills in how to trade foreign currencies, and crypto and digital currencies and how to develop a business on e-commerce platforms and has recently launched a members' travel benefits program. IML has been working on and will launch a health and wellness program in late 2022.

11. The primary IML products currently available to customers are learning modules known as academies. The academies teach customers (i) the basics of foreign currency exchange; (ii) about fast paced trading strategies that can be used for short time frame trading; (iii) about the

digital currency exchange including the different types of digital currencies, block chain, and types of trading, among others; (iv) about e commerce and how to build an online business including setting up an online business, payment processing, advertising online, trending online products and providing customer service for online customers of ecommerce businesses; and (v) various advanced trading strategies.

12. Each academy is delivered by means of access to unlimited interactive online sessions with IML trainers called IML "Educators", via an online interactive service which is called "goLive". Each goLive session is live and interactive and is offered in 13 languages on multiple days and at varied times to accommodate customers in different time zones. Customers can also access a library of pre-recorded video modules for each academy including on mobile devices via the IM academy app.

13. IML's services are sold under a direct sales model and are offered to individuals on a subscription basis. IML acquires its customers through a network of independent self-employed sales representatives who are paid on a commission only basis through a multi-level marketing compensation plan. These representatives are known as Independent Business Owners ("IBOs").

14. Under the direct sales model, IML enters into agreements with the IBOs authorizing them to market IML's products and services to end consumers. IBOs are also offered the opportunity to build a sales team by introducing other individuals to IML to become IBOs and may be compensated for the customer sales of those IBOs in their sales team.

15. IML's business is driven by its IBOs, products and services and customers. The information about the IBOs including their genealogy and other financial, technical and other such information is extremely confidential and proprietary to IML. IML's proprietary data regarding its IBOs and customers gives it a significant competitive advantage in the marketplace. Therefore,

IML treats information regarding its IBOs and customers as highly confidential and restricts access to all such information.

16. All IML IBOs become IBOs of IML products only after entering into four different agreements: the Terms and Conditions, the Policies and Procedures, the Social Media policies, and the Compensation Plan (hereinafter the four agreements together called "the IBO Agreement").

17. The IBO must click boxes that certify that they have carefully read and agree to comply with all four of these agreements constituting the IBO Agreement.

## TERMS AND CONDITIONS

18. As part of the IBO Agreement, the Terms and Conditions includes the following sections:

- 13. I will comply with the IM Policies & Procedures. I further agree that I shall not engage in or perform any misleading, deceptive, or unethical practices, or make any false or misleading statements, regarding IM, the IM Products and/or Services and the IM business opportunity.

- 20. RESTRICTIVE COVENANTS
  
  …
  
  B. Customer/Member Non-Solicitation. During the term of this IBO Agreement and for a period of one (1) year after the expiration or earlier termination hereof, I agree that I shall not Solicit any Customer/Member to whom I have marketed IM Products and/or Services within the immediately prior two (2) years to (i) move their business away from IM; or (ii) purchase products or services that are the same as or similar to any IM Products and/or Services unless expressly approved in writing by IM. I acknowledge and agree that all Customers/Members Solicited by an IBO for the promotion or sale of IM Products or/or Services are deemed to be Customers/Members of IM and not of the IBO, whether or not the IBO originally introduced such Customer/Member to IM.

  C. Restricted IBO Non-Solicitation. During the term of this IBO Agreement and for a period of one (1) year after the expiration or earlier termination hereof, I agree that I shall not Solicit any Restricted IBO to participate, personally or through any entity or other medium, in another multi-level marketing, network marketing, or other direct selling business opportunity. I acknowledge and agree that due the nature of network marketing it is reasonable that the foregoing Solicitation prohibition extends to all markets in which IM conducts business.

/ / /

/ / /

POLICIES AND PROCEDURES

19. As part of the IBO Agreement, the Policies and Procedures includes the following sections:

- Section 1.2 Mutual Commitment Statement

International Markets Live, Inc. (hereinafter referred to as "IM") recognizes that in order to develop a long-term and mutually rewarding relatonship with its independent business owners ("IBOs"). IBOs must acknowledge and respect the true nature of the relationship and support IM's customers ("Customers").
In the spirit of mutual respect and understanding, IM expects that its IBOs will:
…
(viii) Make reasonable effort(s) to support and train other IBOs and Customers in their sales and marketing organization;
(ix) Not engage in crossline sponsoring, solicitation of competing services, unhealthy competition or unethical business practices;
(x) Provide positive guidance and training to IBOs and Customers in their sales and marketing organizations; and
(xi) Support, protect, and defend the integrity of the IM income opportunity;

Section 3.6 Solicitation for Other Companies or Services

(a) An IBO may participate in other direct sales, multilevel, network marketing, or relationship marketing business ventures or marketing opportunities, as long as they are for non-competing services, strategies, or products. However, during the term of the Agreement and for one (1) year thereafter, an IBO may not solicit or recruit any fellow IBO or Customer to whom the IBO
has marketed IM services or strategies within the immediately prior two (2) years to (i) participate, personally or through any entity or other medium, in another multi-level marketing, network marketing, or other direct selling business opportunity (ii) to move their business away from IM; or (iii) purchase products or services that are the same as or similar to any IM Services and/or strategies unless expressly approved in writing by IM.

…

d) All Customers solicited by an IBO for the promotion or sale of IM Services and strategies are deemed to be Customers of IM and not of the IBO, whether or not the IBO originally introduced such Customer to IM.

(e) During the term of this Agreement, IBOs must not sell, or entice others to sell, any competing services or strategies, including training materials, to IM Customers or IBOs. Any product or service in the same category as an IM strategy or service is deemed to be competing (i.e., any competing product or service regardless of differences in cost or quality).

12.1 Business Reports, Lists, and Proprietary Information

By agreeing to the Agreement, IBOs and Customers acknowledge that business reports, the identity and contact information of Customers, IBOs, and potential Customers or IBOs (including as available on group chats), information about IM's or an IBO's genealogy, and any other financial, technical or other information that is not generally known and/or is of a sensitive nature and that is circulated by IM or pertains to the business of IM, both written or otherwise, whether that information is received directly from IM or from other IBOs are confidential and proprietary information and trade secrets belonging to IM. Such information shall be referred to collectively as "IM Confidential Information and Trade Secrets."

12.3 Breach and Remedies

IBOs acknowledge that IM's non-public Confidential Information and Trade Secrets are of such character as to render them unique, and that disclosure or use thereof in violation of §12.1 *et seq.* will result in immediate and irreparable harm to IM and to IBO's IM businesses. In addition to recovering any damages, IM and its IBOs will be entitled to expedited injunctive relief against any IBO who violates this provision in any action to enforce its rights under this section. IM may seek such injunctive relief on an expedited basis under the federal
Defend Trade Secrets Act and/or the laws of the State of Nevada. The prevailing party shall be entitled to an award of lawyer's fees, court costs and expenses.

12.4 Return of Materials

An IBO shall immediately return to IM the original and all copies of all IM Confidential Information and Trade Secrets in such person's possession upon (1) termination of this Agreement, or (2) demand by IM.

20.     On or about September 15, 2021, Defendant AMANDA CUSTER entered into the IBO Agreement.

21.     On or about May 18, 2021, Defendant COLE CUSTER entered into the IBO Agreement.

22.     On or about May 21, 2021, Defendant JENN EUSTERWIEMANN entered into the IBO Agreement.

23.     On or about March 19, 2022, Defendant JOSHUA EUSTERWIEMANN entered into the IBO Agreement.

24. On or about June 6, 2021, Defendant JEMMA WILSON entered into the IBO Agreement

25. On or about January 6, 2022, Defendant CHRISTIAN OERTEL entered into the IBO Agreement. (these six Individuals known as the "Individual Defendants.")

26. At all times relevant herein, the Individual Defendants knew and were aware of the terms of the IBO Agreement, including the IML Policies and Procedures with prohibitions against recruiting IML IBOs and traders to leave IML, the prohibition against working for a competitor of IML, and the prohibition against providing Confidential Information and intellectual property to anyone outside of IML.

27. Individual Defendants have breached the IML Policies and Procedures.

28. Individual Defendants breached their contracts with IML by, among other things, leaving IML and immediately starting a competing company, VOREX FOR WOMEN aka FX FOR WOMEN.

29. Individual Defendants have conspired to bribe, solicit, recruit, and entice other IML IBOs, customers, and traders away from IML and to FOREX FOR WOMEN.

30. Individual Defendants bribed, solicited, recruited, and enticed other IML IBOs and traders away from IML and to FOREX FOR WOMEN.

31. Individual Defendants intentionally and knowingly bribed, solicited, enticed, and recruited IML IBOs and traders to leave IML and to work for FOREX FOR WOMEN.

32. Individual Defendants knowingly, intentionally, and wrongfully took Confidential Information and intellectual property from IML.

33. Individual Defendants knowingly, intentionally, and wrongfully gave the Confidential Information and intellectual property they took from IML to FOREX FOR WOMEN.

34. FOREX FOR WOMEN used the Confidential Information and intellectual property that it knew Individual Defendants stole from IML.

35. Individual Defendants knowingly, intentionally, and wrongfully used the Confidential Information and intellectual property they took from IML when they worked for FOREX FOR WOMEN.

36. Individual Defendants knowingly and intentionally published false statements on social media platforms regarding IML, its employees, and IBOs.

37. Defendants published these false statements against IML in order to promote FOREX FOR WOMEN.

38. IML suffered financial harm as a result of Individual Defendants, and FOREX FOR WOMEN's wrongful conduct.

## FIRST CLAIM FOR RELIEF
(Breach of Contract against Individual Defendants)

39. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

40. Individual Defendants all entered into, or otherwise agreed to be, and were bound by a contract with IML.

41. At all relevant times herein, IML performed the obligations and duties required of it by the contracts it had between IML and Individual Defendants.

42. The Individual Defendants each breached their contracts with IML by failing to conform to the terms of their respective agreement(s), namely by taking confidential and trade secret information from IML for FOREX FOR WOMEN's use.

43. The breaches of the contracts by Individual Defendantshave caused damages to IML excess of one million dollars ($1,000,000.00).

44. IML is entitled to its reasonable attorney's fees due to Defendants' breach of the agreements.

### SECOND CLAIM FOR RELIEF
(Misappropriation and Violation of Uniform Trade Secrets Act – Nevada Revised Statues Chapter 600A against all Defendants)

45. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

46. Individual Defendants acquired IML's trade secrets by an improper means, including stealing or misappropriating the trade secrets from IML by downloading the content of the IM Academy which she plans to use to compete with IML.

47. Individual Defendants misappropriated IML's trade secrets by disclosing the trade secrets without express or implied consent from IML, including those trade secrets that were obtained without authorization from IML.

48. Defendants further misappropriated IML's trade secrets by using the trade secrets without express or implied consent from IML.

49. Defendants had a duty to maintain the secrecy of IML's trade secrets.

50. As a result of Defendants' misappropriation of IML's trade secrets, IML has suffered damages to be determined at trial in excess of one million dollars ($1,000,000.00).

51. IML is entitled to exemplary damages due to Defendants' willful and malicious misappropriation of IML's trade secrets in excess of one million dollars ($1,000,000.00).

52. IML is entitled to its reasonable attorney's fees and costs due to Defendants' willful and malicious misappropriation of IML's trade secrets.

### THIRD CLAIM FOR RELIEF
(Tortious Interference with Contractual Relations against Defendants)

53. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

54. IML had contractual relationships with customers and individual representatives who are receiving educational products for Forex markets in exchange for monetary compensation.

55. Defendants knew of these relationships.

56. Defendants spread false information and used IML's confidential information and trade secrets to form relationships with IML's customers for FOREX FOR WOMEN's gain.

57. Defendants' conduct was not legally justified.

58. As a direct and proximate result of Defendants' interference with IML's contractual relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

59. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF
(Tortious Interference with Prospective Economic Advantage against Defendants)

60. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

61. IML had prospective contractual relationships with customers and individual representatives who desired to participate in receiving educational products for Forex markets.

62. Defendants knew of these prospective relationships.

63. Defendants spread false information and used IML's confidential information and trade secrets with the intent of preventing and inhibiting IML's relationships with the prospective customers.

64. Defendants' conduct was not legally justified.

65. As a direct and proximate result of Defendants' interference with the prospective customer relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

66. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF
(Conspiracy against all Defendants)

67. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

68. Defendants, in a combination of two or more persons, conspired to commit unlawful acts against IML.

69. Defendants decided upon an object to be accomplished to harm IML namely Defendants object to be accomplished was (1) the theft of IML Confidential Information and intellectual property, and (2) the bribery, solicitation, recruitment, and encouragement of IML IBOs and traders to breach their contracts with IML.

70. Defendants, in a combination of two or more persons, reached a meeting of the minds as to the object to be accomplished identified above.

71. Defendants committed one or more unlawful, overt acts, including to the detriment and harm of IML.

72. As a direct and proximate result of Defendants' unlawful conspiracy, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

73. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

WHEREFORE, PLAINTIFF PRAYS FOR
THE FOLLOWING RELIEF AGAINST DEFENDANTS:

1. For Damages in an amount greater than $1,000,000.00 as a result of Defendants' unlawful actions;

2. For injunctive relief to enjoin the Defendants from the following:

- Defendants shall immediately refrain from using any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials, including downlines, back-office data, binary options trading software, and binary options trading algorithms;

- Defendants shall immediately refrain from disclosing any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendants shall immediately return any equipment, or other materials, including but not limited to, hard copies of documents and/or data, electronic copies of documents and/or data, emails, and any other material containing or referring to any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendants shall immediately refrain from conducting and soliciting any business, accepting any employment by or rendering professional services to, any person or organization that is or was a IML distributor, trader, and/or client, which includes that FOREX FOR WOMEN shall not conduct business with those Defendants who are former IML IBOs or traders; and

- Defendants shall immediately refrain from soliciting, recruiting, bribing, and/or enticing IML IBOs and/or traders to violate their contracts with IML and/or misappropriate IML's Confidential Information and/or intellectual property.

3. For an award of pre-judgment interest, as well as reasonable attorneys' fees as both normal and special damages, and other costs; and

/ / /

/ / /

4.  For such other and further relief that this Court deems just and proper.

Dated this 20th day of November, 2023

                          KERR SIMPSON ATTORNEYS AT LAW

/s/George E. Robinson, Esq.
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: george@kerrsimpsonlaw.com
*Attorneys for Plaintiff*